```
1
2
3                    IN THE UNITED STATES DISTRICT COURT
4                          FOR THE DISTRICT OF ARIZONA
5
6   Keith Brown,                          )    No. CV 08-196 TUC CKJ (JM)
                                          )
7              Plaintiff,                 )    **REPORT AND RECOMMENDATION**
                                          )
8   vs.                                   )
                                          )
9   Michael J. Astrue, Commissioner of the)
    Social Security Administration,       )
10                                        )
               Defendant.                 )
11                                        )
                                          )
12
```

13       Pursuant to 42 U.S.C. § 405(g), Plaintiff Keith Brown seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying him benefits. This Social Security Appeal has been referred to the United States Magistrate Judge pursuant to Local Rule – Civil 72.2(a)(10) of the Rules of Practice of this Court. Based on the pleadings of the parties and the record submitted to the Court, the Magistrate Judge recommends that the District Court, after its independent review, grant in part and deny in part Plaintiff's Motion for Summary Judgment [Doc. No. 13], and deny Defendant's Cross-Motion for Summary Judgment [Doc. No. 14].

**I.     Background**

      Brown applied for Disability Insurance Benefits on June 21, 2005, claiming disability with an onset date of June 1, 2004, due to weakness in his left (dominant) hand, median ulnar neuropathy on the left side, monoclonal gammopathy, symptoms of ALS, headaches, seizure disorder, a history of carbon monoxide poisoning, and depression. (Tr. 17 & 56-58). The application was denied initially and upon reconsideration. (Tr. 42-50). Brown then requested a hearing before an ALJ. (Tr. 41). Represented by counsel, Brown appeared at the hearing on December 14, 2006, before ALJ Milan J. Dostal. A vocational expert ("VE")

also testified at the hearing. Brown's claims were denied by the ALJ in a decision dated February 16, 2007. (Tr. 15-21).

Brown requested review of the hearing decision by the Appeals Council. (Tr. 11). The decision became the final decision of the Commissioner when the Appeals Council denied Brown's request for review. (Tr. 3-5). Brown then commenced an action for judicial review pursuant to 42 U.S.C. § 405(g). In his motion for summary judgment, Brown asserts that the ALJ mischaracterized Brown's ability to work in light of his left hand atrophy and seizure disorder, erred in assessing Brown's credibility, erred in assessing the evidence in relation to Brown's ability to work, and provided the VE with an inaccurate hypothetical. In terms of relief, Brown seeks an order awarding benefits or, alternatively, remand for further proceedings.

In his response and cross-motion, the Commissioner argues that the new evidence Brown submitted to the Appeals Council should not be considered, that, in any case, the ALJ provided the proper rationale for finding Browns subjective claims of disability not entirely credible, and that the hypothetical presented to the VE was complete.

**II.      Standards**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

A court reviews the Commissioner's final decision to determine whether the factual findings are supported by substantial evidence and whether the proper legal standards were applied in weighing the evidence and making the decision. *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). "Substantial evidence" means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Burch v. Barnhart*, 400 F.3d 676,

1  679 (9th Cir. 2005). Where evidence is susceptible to more than one rational interpretation,
2  a court must uphold the ALJ's conclusion. *Id.*

3  **III.    Record on Appeal**

4           **A.      Brown's Testimony**

5  At the time of the hearing, Brown was 49 years old. He has an Associates Degree in
6  engineering and previously worked on the design and building of computers and writing
7  software. (Tr. 262-263). He was laid off from work in December 2004 and tried to look for
8  work but at about the same time he was diagnosed with "partial ALS and seizures." (Tr.
9  263). In addition to his computer work, Brown had previously been employed as an
10 operations engineer at a television station, in the development of "intelligent cash registers,"
11 and in building "cryogenic CCD cameras." (Tr. 264-265).

12 He reported that he experienced two types of seizures:

13           The first type started when I was 16, and they're kind of the you
             know, you're, what I always thought a seizure was. It's you
14           know, you get dizzy and, and start sweating, and, and would
             eventually end up in a Grand Mal, passing out and then going
15           into convulsions.

16 (Tr. 267). It had been several months since he last experienced a seizure of this type (Tr.
17 268), and it was "quite a few years ago" that he was rendered unconscious (Tr. 274). With
18 this type of seizure, Brown explained that he

19           could feel them coming. You know, start with ringing in the
             ears and sweating on the head, and I found that if I just got real
20           calm, lie down and you know, in the dark, and do some deep
             breathing, then I could keep it from progressing to the worst
21           stages. So I haven't let it reach Grad Mal in a long time.

22 (*Id.*).

23 He described the second type of seizure as involving a "24 hour headache, ringing
24 ears and extreme sensitivity to sound, and then there's the stabbing pains, which you'll see
25 me convulse every once in a while here." (Tr. 268). He described having about six episodes
26 of this type of seizure and explained that they occur in "chain mode, where it's stabbing pain
27 about once a second, non-stop for so far, up to four days." (*Id.*). He gets nauseous during
28 these episodes and cannot sleep, eat or drink. (*Id.*). He was prescribed Lyrica " to try to

- 3 -

control the seizures and the head pains" he was experiencing. (Tr. 266). He had been on it for "four or five months" and had previously tried Phenytoin, which did not work.

Brown describes the doctor's diagnosis of his ALS as "restricted ALS." (Tr. 269). He initially believed the symptoms, which appeared in his left arm, were associated with carbon monoxide poisoning that occurred 15 years ago. (Tr. 269-70). He explained that "[i]t's like the monoxide poisoning aggravated something that was already there." (Tr. 270).

Brown testified that he is able to stand "[a] couple hours before I start hurting real bad." (Tr. 270). He also cannot sit for long and has "to get up once in a while and stretch the muscles out. Otherwise, I get cramped up." (*Id.*). As for walking, his right knee gives him problems and his hips are bad. (Tr. 271). In relation to his left arm, he has numbness in his fingers and limited movement and "can't do anything accurate or that takes any strength." (Tr. 271-72). His right hand functions "okay," but he has right shoulder and elbow pains. (Tr. 272).

When asked about his activities, Brown stated that he watches movies and tries "to keep quiet." (*Id.*). He makes his own meals, but it "takes a bit," and he has a driver's license and drives when he is feeling well enough. (Tr. 273). This is usually once or twice a month and he will go out to get groceries. (Tr. 276). He also spends time on the computer browsing the internet, doing research and keeping up with developments in the field of electronics. (Tr. 273). When he is working on the computer, he uses his right arm to move the mouse and finds typing difficult. (Tr. 275). He can only concentrate for a "couple minutes" before he loses track of what he is doing. (*Id.*). He does not exercise much as it causes his head pain and seizures to escalate. (Tr. 273).

**B.     Vocational Expert Testimony**

The VE, Rosa Van Vleet, described Brown's past work as light to medium, skilled work. (Tr. 278). The ALJ then offered her the following hypothetical:

> Well, let's assume we have a hypothetical man, who is 49 years of . . . age. He has 14 years of education, has a work experience and educational background that Mr. Brown has had. This hypothetical person has some problems and as a result, he can lift and carry approximately 10 pounds frequently and 20

>pounds on an occasional basis. He's left-hand dominant. He's got, he should avoid working [on] ladders, ropes and scaffolds, and he has, he should avoid working, work above shoulder-height, and he has some paralysis of his left hand and can only use it as a hook to assess [sic] his . . right hand. And therefore has some limitations of his, with his handling and fingering of his left hand. This hypothetical person has some seizure problems, so he should avoid working at unprotected heights and where there might be dangerous moving machinery. He has some issue, avoid excessive amounts of vibration. This hypothetical person has pain in his head, his knees, wrist and hips, and for the first hypothetical, assume that he would have a slight nature and has a slight effect on his ability to basic work activities. And that condition is or can be controlled by appropriate medication, without significant adverse side effects. Now this hypothetical person also has some other problems like ALS and other medical, and those are, those are included with the other factors that I've indicated here, and if so, otherwise they would be of a slight nature and would have a slight effect on their ability to do basic work activities, or that condition is or sill be controlled by appropriate medication, without significant adverse side effects. This hypothetical person also has some depression, with some symptoms of confusion and for the first hypothetical I think that, that this hypothetical person would have a slight effect on his ability to do basic work activities, and that condition is or could be controlled by appropriate medication, without significant adverse side effects.

(Tr. 279-280). Based on that hypothetical, the VE opined that the person described would be unable to perform any of the past work performed by Brown. (Tr. 280). However, if his seizures were "basically controlled," the VE believed Brown could perform sedentary unskilled work as a surveillance monitor. (Tr. 281). The VE's opinion remained the same after the ALJ added moderate pain and psychiatric problems that would normally affect his work ability but were controlled by the appropriate medication. (Tr. 282). However, she believed Brown would be unable to work if his pain and psychiatric problems were not adequately controlled with medication. (Tr. 283).

When questioned by Brown's attorney, the VE indicated that Brown would be unable to work as a surveillance monitor if the flickering of the monitor triggered seizures. (Tr. 286). She also agreed that he would be unable to do the job if he was completely unable to use a computer keyboard. (Tr. 286-87).

**IV. ALJ's Decision**

The Social Security Regulations establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 404.1520. At **step one** of the process, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(b).

When the claimant is not currently engaged in substantial gainful activity, the ALJ, in **step two**, must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities; if not, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(c). A severe impairment or combination of impairments exists when there is more than a minimal effect on an individual's ability to do basic work activities. 20 C.F.R. § 404.1521(a); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Basic work activities are "the abilities and aptitudes necessary to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling, as well as the capacity for seeing, hearing and speaking, understanding, remembering and carrying out simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

At the **third step**, the ALJ must compare the claimant's impairment to those in the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits awarded. 20 C.F.R. § 404.1520(d).

When the claimant's impairment does not meet or equal an impairment in the Listing, in the **fourth step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work; if so, a finding of non-disability is made and the claim is denied. 20 C.F.R. § 404.1520(e).

When the claimant shows an inability to perform past relevant work, a prima facie case of disability is established and, in **step five**, "the burden shifts to the Commissioner to

show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

In this matter, the ALJ determined that Brown had not engaged in substantial gainful activity since June 1, 2004. (Tr. 17). Second, the ALJ found that Brown had severe impairments, including a history of carbon monoxide poisoning with residual left arm dysfunction, a seizure disorder, monoclonal gammopathy, median and ulnar neuropathy of the left, and some elements of ALS. (*Id.*) Third, the ALJ concluded that Brown did not have an impairment or any combination of impairment listed in or medically equal to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18).

Fourth, the ALJ found Brown had the following residual functional capacity:

> Claimant is able to stand, sit and walk for less than 6 hours in an eight hour day with breaks form standing every one to two hours, breaks from walking at least hourly and breaks form sitting every two or more hours. Claimant is able to lift/carry less than 10 pounds and is marked[ly] limited in his upper extremities. Claimant has some problems and is left hand dominant. He should avoid working at ladders ropes and scaffolds, should avoid work above shoulder height and has some paralysis of his left hand and can only use it as a hook to assist his right hand and therefore has some limitations with his handling and fingering with the left hand[.] [H]as a seizure problem so he should avoid working at unprotected heights or around dangerous moving machinery, should avoid excessive amounts of vibration and has pain in his head, knee, wrist and hips; and assume it would be of a slight nature and would have a slight effect on his ability to do basic work activities and that condition is or can be controlled by approproate medication withotu signcant adverse side effects. His other problems such as ALS have been considered and are inlcuded in this reidual functional assessment. He also has some depression which causes some confusion, but this condition can or is controlled by appropriate medication without signcant adverse side effects.

(Tr. 18-19.) The ALJ found Brown unable to perform his past relevant work. (Tr. 20).

Fifth, the ALJ concluded that Brown was not disabled at any time from June 1, 2004, through February 16, 2007, the date of the decision. (Tr. 21). Based on the testimony of the vocational expert, and after considering Brown's age, education, work experience, and residual functional capacity, the ALJ found Brown "capable of making a successful

adjustment to other work that exists in significant numbers in the national economy." (*Id*.) The ALJ found that Brown was "able to perform the requirements of representative occupations such as a surveillance monitor, 11,000 jobs in the national economy," and therefore he was not disabled under the Social Security Act. (*Id*.)

**V.     Discussion**

     **A.     The Court will consider Brown's additional evidence.**

As a threshold issue, the Commissioner objects to the consideration of evidence not submitted to the ALJ. The evidence, which was submitted to the Appeals Council nine months after the ALJ rendered his decision, consists of a brief written by Brown's attorney (Tr. 224-41); two letters dated May 7, 2007, and July 6, 2007, from Brown's neurologist, David R. Siegel, M.D. (Tr. 242-46); and a psycho-social work assessment by Charles J. Rastatter, Ed.D., dated October 30, 2007 (Tr. 247-57). The Commissioner contends that Brown is required, but failed, to establish that the new evidence is material and that there was good cause for his failure to incorporate this evidence in the initial proceeding. In response, Brown argues that there is no legal basis for these requirements and that the evidence should be considered.

There appears to be authority for both the Commissioner's and Brown's positions on the propriety of consideration of the new evidence by the District Court. In *Mayes v. Massanari*, 276 F.3d 453 (9th Cir. 2001), the Ninth Circuit concluded that pursuant to 42 U.S.C. § 405(g), to justify remand based on the new evidence presented for the first time to the Appeals Council, a claimant must established that the additional evidence is "new" and "material" to determining his disability, and that he "had good cause for having failed to produce that evidence earlier." *Mayes*, 276 F.3d at 462. To demonstrate "good cause," the claimant must show that the evidence was "unavailable earlier." *Id*. at 463. The good cause requirement is not satisfied by "merely obtaining a more favorable report" following the denial of a disability claim. *Id.*

However, in *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit footnoted that:

> In denying [the claimant's] request for review, the Appeals Council considered additional medical evidence that he submitted [after his hearing before the ALJ]. Under these circumstances, "we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review.")

*Id.* at 1030 n. 2. In *Lingenfelter*, the court made no mention of the requirement that a claimant make a threshold showing of good cause to justify a court's consideration of evidence presented for the first time to the Appeals Council.

These seemingly inconsistent approaches to resolving the question of whether to consider evidence not presented to the ALJ have been harmonized based on whether the Appeals Council considered the evidence in reaching its decision. In considering a claimant's assertion that evidence first submitted to the Appeals Council should be considered, one district court distinguished *Ramirez*, the case cited by the *Lingenfelter* court, "because in *Ramirez* the Appeals Council examined and considered the additional material submitted after the ALJ hearing." *Tomson v. Halter*, 2001 WL 213758 (D. Or. February 7, 2001). Thus, the decision whether to consider such evidence was determined to turn on the question of whether the Appeals Council had examined and considered the evidence in making its determination. This approach is not uniform throughout the United States Circuit Courts, *see, e.g., Matthews v. Apfel*, 239 F.3d 589 (3rd Cir. 2001), however, it appears to have the approval of the Ninth Circuit. *See Lingenfelter*, 504 F.3d 1028; *see also Harman v.* , 211 F.3d 1172, 1179 (9th Cir.), *cert. denied*, 121 S.Ct. 628 (2000) (a reviewing court "properly may consider the additional material because the Appeals Council addressed them in the context of denying [the claimant's] request for review").

Here, the Appeals Council's notice expressly states that the additional evidence was considered, but that the conclusions "are not supported when considering the overall record." (Tr. 3-4). In its associated order, the Council stated that it "has received additional evidence which it is making part of the record," and listed the brief from Brown's counsel, the letters

from Dr. Siegel, and the report from Dr. Rastatter. (Tr. 6). From these entries in the record, it is clear that the additional evidence was examined and considered by the Appeals Council and will therefore be considered by the Court in evaluating Brown's claims of error.

### B.     Remand is appropriate.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman*, 211 F.3d at 1178. A decision to remand for further proceedings generally "turns upon the likely utility of such proceedings." *Id.* at 1179. Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996); *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, the new evidence has created several outstanding issues that remain to be resolved.

Brown argues that the ALJ mischaracterized his ability to work in light of his left hand atrophy and seizure disorder. In support of this argument, however, he only quotes from the medical record, but offers no specifics on the claim that his condition was mischaracterized. However, considering only the evidence that was before him, the ALJ several times recognized Brown's left arm dysfunction. (Tr. 17 ("residual left arm dysfunction" and "[e]xaminations report atrophy and weakness in the left hand."); Tr. 18 ("has some paralysis of his left hand and can only use it as a hook to assist his right hand"); Tr. 19 ("lack of control over muscles in the left arm"); Tr. 20 (claimant is "unable to return to his [past relevant] work because it requires bimanual competence.")). The ALJ also recognized Brown's seizure disorder. (Tr. 17 ("The claimant has . . . a seizure disorder" and "Claimant has a seizure disorder diagnosed at age 16."); Tr. 18 ("has a seizure problem so he should avoid working at unprotected heights or around dangerous moving machinery")). Brown

does not explain how these conditions were mischaracterized, other than the fact that they were not found to be disabling.

Brown also contends that the ALJ erred in assessing his credibility. In support of this assertion, Brown states:

> Clearly the ALJ has not read the additional information provided by the treating physician to the Appeals Council and has not studied the functional evaluation provided by the Disability Assessment Research Clinic of the University of Arizona.

*Plaintiff's Motion*, p. 9. He then proceeds to quote from the ALJ's decision and then immediately attempts to rebut the ALJ's position with the letters and study that he submitted to the Appeals Council. He also complains that the hypothetical given by the ALJ to the VE was incorrect and supports his position with additional information from the evidence that was not before the ALJ.

Given that the new evidence may affect the characterization of Brown's medical condition, the evaluation of his credibility, and the opinion of the VE, the Court finds that remand is appropriate. In *Harman*, the court remanded the case for further proceedings, reasoning as follows:

> While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law. The appropriate remedy in this situation is to remand this case to the ALJ; the ALJ may then consider, the Commissioner then may seek to rebut and the VE may answer questions with respect to the additional evidence.

211 F.3d at 1180.

Like the *Harman* court, this Court recommends that the District Court, exercising its discretion, remand this matter for a further evidentiary hearing. The record has not been fully developed in that neither the ALJ nor the Appeals council has evaluated the impact of the new evidence on the issues raised by Brown. Further administrative proceedings will serve the useful purpose of allowing the ALJ to take into account the new evidence in relation to
{{FOOTER}}

Brown's medical condition, his credibility, and the impact (if any) on the hypothetical provided to the VE.

**VI.    Recommendation**

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an Order **granting in part and denying part** Plaintiff's Motion for Summary Judgment [Doc. No. 13], **denying** Defendant's Cross-Motion for Summary Judgment [Doc. No. 14], and **remanding** this matter for further administrative proceedings.

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have ten (10) days within which to file a response to the objections. If any objections are filed, this action should be designated case number: **CV 08-0196-TUC-CKJ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

DATED this 21st day of August, 2009.

*Jacqueline Marshall*
Jacqueline Marshall
United States Magistrate Judge